UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| v. | : | Criminal No. 99-238 (GK) |
| HELENA J. OGBURN, | : | **FILED** |
| Defendant. | : | AUG 1 4 2007 |
| | | NANCY MAYER WHITTINGTON, CLERK<br>U.S. DISTRICT COURT |

## MEMORANDUM OPINION

This matter is before the Court on the Government's Application for Writ of Continuing Garnishment. Upon consideration of the Application, the Defendant's oral opposition presented in open court on July 10, 2007, and the applicable statutes and case law, the Court concludes that the Application should be **granted**, although its effectiveness shall be temporarily suspended.

### I.   Factual Background

On July 29, 1999, the Defendant pled guilty to Count I of the Information, which was Theft from a Credit Union in Violation of 18 U.S.C. § 2113 (b), (2). On October 20, 1999, she was sentenced to a term of probation for five years, and was ordered to pay restitution of $20,400 to the District of Columbia Government Employees' Credit Union.

While on probation, the Defendant maintained her schedule of restitution payments. By the conclusion of her probation, she had paid $5,396.96, and as of July 10, 2007, owed $25,541.74. Defendant stopped her restitution payments when her probation ended, sometime in 2004, and has paid only $160 since that date. On September 8, 2004, Defendant signed an Installment Payment Agreement with the Government promising to pay monthly installments of at least $250 until she made full restitution, which was scheduled to occur in approximately October of 2019. On May 21,

2007, the Government filed the present Application for Writ of Continuing Garnishment upon the criminal judgment. Thereafter, the Defendant requested a hearing on the Government's application and said hearing was held on July 10, 2007. At that time, she was represented by Federal Defender.

The Government's Writ Application requested that 25 percent of Ms. Ogburn's wages be garnished to pay restitution to the victim in this case. Ms. Ogburn represented to the Court that she did wish to continue payments pursuant to the installment payment agreement signed with the Government in 2004, but that she was unable to do so at this time because of her personal financial situation. She requested that the Court suspend her obligation to satisfy the garnishment until she was able to afford the payments.

## II.   Analysis

The Government brings this Application for Writ of Continuing Garnishment of Defendant's wages to satisfy an outstanding restitution balance under 18 U.S.C. § 3613(a). That statute provides that "[t]he United States may enforce a judgment imposing a fine [or restitution][1] in accordance with the practices and procedures for the enforcement of a civil judgment under Federal law." The enforcement procedure in this case is provided by the Federal Debt Collection Procedures Act ("FDCPA"), 28 U.S.C. § 3205(a). It provides that "[a] court may issue a writ of garnishment against property (including nonexempt disposable earnings) . . . in order to satisfy the judgment against the debtor." The Government must, as it is doing in this case, apply to a court to obtain a writ of garnishment. The FDCPA states that, if certain procedural requirements are met, "the court shall issue an <u>appropriate</u> writ of garnishment." 28 U.S.C. § 3205(c) (emphasis added).

---

[1]   18 U.S.C. 3613(f) provides that "all provisions of this section are available to the United States for the enforcement of an order of restitution."

There are two issues raised by the Defendant's opposition: (1) whether the Court has authority to stop, suspend, or otherwise modify garnishment of Defendant's wages under the FDCPA; and (2) if the Court has such authority, what course of action is most appropriate in this case.

The parties agree that the issues presented are of first impression in this District. However, the relevant statutory provisions and the limited case law from other districts both lead to the conclusion that the FDCPA gives courts broad authority to modify the garnishment procedure, and allows them to take into account a defendant's individual circumstances in exercising that authority.

### A. The FDCPA Provides Authority to Stop, Suspend, or Otherwise Modify a Writ of Garnishment

A writ of garnishment reaches the debtor's "nonexempt disposable earnings," 28 U.S.C. § 3205(a), defined as "25 percent of disposable earnings." 28 U.S.C. § 3002(9).[2] The FDCPA does not expressly state that 25 percent of nonexempt disposable earnings is the required amount of garnishment.

The majority of the case law, limited as it is, holds that 25 percent is a ceiling, not a floor, for the amount to be garnished and that courts have authority to impose an amount below 25 percent. The statutory basis for this inclusion is found in 28 U.S.C. § 3013, which clearly provides that "[t]he court may at any time on its own initiative or the motion of any interested person . . . make an order denying, limiting, conditioning, regulating, extending, or modifying the use of any enforcement procedure under this chapter [including the writ of garnishment under § 3205]." See United States

---

[2] "Disposable earnings" are defined as "that part of earnings remaining after all deductions required by law have been withheld." 28 U.S.C. § 3002(5). "Earnings" are defined as "compensation paid or payable for personal services, whether denominated as wages, salary, commission, bonus, or otherwise." 28 U.S.C. § 3002(6).

v. Kaye, 93 F. Supp. 2d 196, 199 (D. Conn. 2000); United States v. Crowther, 473 F. Supp. 2d 729, 731 (N.D. Tex. 2007) (same, following Kaye).

Kaye is almost factually identical to the present case. The defendant's sentence in Kaye included restitution, incarceration, and supervised release. After the supervised release ended, defendant stopped making restitution payments and the Government requested a wage garnishment. Id. at 197. The defendant argued for a reduction in garnishment on the basis that 75 percent of his wages was insufficient to meet his family's needs. The court held that it had discretion pursuant to § 3013 to modify the writ of garnishment. Id. at 199. After considering the specific financial circumstances of the defendant and his spouse, however, the court concluded that the 25 percent garnishment was reasonable. Id. at 199-200.

Kaye rejected a number of the Government's arguments seeking to limit the court's discretion to modify the garnishment amount. First, the Government argued that § 3013 was limited to preventing clear abuses such as "garnishment of exempt property, disruption of a defendant's financial affairs, or overkill in the remedies utilized." Id. at 198. The court found no statutory language supporting that limitation, and held that "[w]hile no criteria for an order [modifying enforcement] is found in § 3013, it is not inappropriate to apply a concept of reasonableness to the exercise of § 3013 authority." Id. (emphasis added).

Second, the Government argued that since the FDCPA is intended to promote uniformity in debt collection, the circumstances of individual debtors should not be taken into account. The court noted that nothing in the statutory text supported such a limitation, and that the legislative history of the statute emphasizes "affording fundamental protections to the rights of all individuals." Kaye, 93 F. Supp. 2d, at 198 (citing 136 Cong. Rec. H13288-02, 13290). The court then concluded that

a case-specific determination of reasonableness is the standard for the exercise of § 3013 authority. Id. The court also rejected the Government's attempt to apply the limits on quashing remedies contained in 28 U.S.C. § 3202(d) to § 3013.[3] Id. at 198-99.

Other provisions in the FDCPA also support the conclusion that courts retain discretion to modify a writ of garnishment. United States v. George, 144 F. Supp. 2d 161, 164-65 (E.D.N.Y. 2001), focused on two such provisions. First, 28 U.S.C. § 3205(a) provides that a court "may issue a writ of garnishment" (emphasis in original) and "[n]othing in that language mandates a garnishment of a particular amount." Id. at 164. Second, the definition of "nonexempt disposable earnings" is "subject to section 303 of the Consumer Credit Protection Act." 28 U.S.C. § 3002(9). Section 303, 15 U.S.C. § 1673, provides that 25 percent is only the "[m]aximum allowable garnishment," not the necessary garnishment amount. Reading these statutes together, the court reasoned that "all the pertinent statutory language indicates that 25% is a maximum figure. Common sense dictates the same result." George, 144 F. Supp. 2d at 165. For those reasons, the court concluded it had the authority to reduce the garnishment amount based on the circumstances of the individual garnishee. Id. at 164.

While district courts in Connecticut, New York, and Texas have reached the same conclusion that they have authority to modify a writ of garnishment, one court has rejected this view. See United States v. Hanhardt, 353 F. Supp. 2d 957 (N.D. Ill. 2004). In Hanhardt, the court held "there is no justification in the law for lowering the amount of the garnishment," and "the law does not

---

[3] In a non-default judgment, the issues on which a judgment debtor may move to quash a remedy are limited "to the probable validity of any claim of exemption" and "to compliance with any statutory requirement for the issuance of the postjudgment remedy granted." 28 U.S.C. §§ 3202(d)(1)-(2).

allow the court to make a determination as to whether the financial circumstances of [defendant's] wife take priority over his legal obligation to pay restitution." Id. at 960-61. In reaching this holding, the court found that under 28 U.S.C. § 3002(9), 25 percent was the required amount of garnishment. Id. at 960. Curiously, the court addressed neither Kaye – an earlier case – nor § 3013. Nor did it address the substance of George, which it distinguished with a one-sentence comment that its holding was governed by a different statute. Id. In fact, the court in Hanhardt did not directly analyze the possibility of judicial modification at all, and focused its attention solely on the question of who had "the superior legal claim to [defendant's] annuity funds": the government or the defendant's elderly wife. Id. at 961. Because of the absence of any detailed statutory analysis of the FDCPA, the reasoning in Hanhardt is unpersuasive.

For the reasons discussed, the Court concludes that § 3013 provides the authority to modify the writ of garnishment. It must now examine the particular circumstances of this case to determine the most appropriate and reasonable manner in which to exercise that authority.

**B.    Temporary Suspension of Garnishment Is Appropriate and Reasonable in This Case**

As the foregoing analysis demonstrates, temporary suspension of a writ of garnishment is permitted under 28 U.S.C. § 3013. The language in § 3013, allowing court orders "denying, limiting, conditioning, regulating, extending, or modifying," pre-existing enforcement procedures permits a broad range of judicial discretion with respect to a writ of garnishment. Furthermore, suspension of a Writ of Garnishment is more analogous to modification than to quashing of the garnishment altogether, because the defendant must still pay the outstanding restitution balance.

Therefore, an order suspending garnishment would not be subject to the limitations of 28 U.S.C. § 3202(d).

While the financial record was not totally clear, the Defendant indicated that her gross income at this time is $1,200 every two weeks, or $31,200 per year. Her gross income does not include deductions for taxes, Social Security, and health insurance. She indicated that her take home pay is approximately $850 every two weeks, or $22,100 per year. Her husband is currently unemployed and brings home approximately $600 every two weeks in unemployment compensation. The couple owns a home which they estimate is worth approximately $300,000-350,000. They have two children, ages 2 and 11. Their monthly expenses include a mortgage of $1,850, automobile installment payments and gas expenses of $1,875 for two cars, as well as other expenses, such as food, clothing, utilities, etc. The mortgage payment is being made by withdrawals from the Defendant's husband's 401k plan.

In 2006, the Defendant and her husband earned approximately $83,000. As is to be expected, the loss of one partner's income has made living extremely difficult for this couple. The garnishment of 25% of the Defendant's disposable income has made it virtually impossible for the Defendant to maintain her family's pre-existing standard of living.

Ms. Ogburn has represented that her husband believes he will obtain employment within the very near future. She wishes to resume her restitution payments as soon as her husband obtains new employment. The Court will take her at her word, but puts her on notice that the suspension of the garnishment is for only a limited period of time, and that she may have to consider sale of her home and cars for far less expensive housing and transportation.

**WHEREFORE**, it is this 14th day of August, 2007, hereby

**ORDERED**, that the Government's Application for Writ of Continuing Garnishment is hereby **suspended**; and it is further

**ORDERED**, that on **October 1, 2007**, Defendant is to submit a declaration informing the Court of the status of her husband's employment and her ability to resume her restitution payments; and it is further

**ORDERED**, that Defendant is to submit along with such statement a verified financial statement, using the form adopted by the Court's Probation Office; and it is further

**ORDERED**, that there will be a further hearing in this matter on **October 4, 2007, at 10:00 a.m.**

_____
Gladys Kessler
United States District Judge